## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CHARLES BROWN, JR., individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | CLASS ACTION |
| v. | |
| WORKFORCE SOFTWARE, LLC, | JURY TRIAL DEMANDED |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Charles Brown, Jr. ("Plaintiff"), individually and on behalf of all others similarly situated (collectively, "Class Members"), by and through undersigned counsel, brings this Class Action Complaint against Defendant WorkForce Software, LLC ("WorkForce" or "Defendant") and complains and alleges upon personal knowledge as to himself and information and belief as to all other matters.

## INTRODUCTION

1.      This class action arises from Defendant's failure to implement and maintain reasonable data security procedures and practices, resulting in a data breach in or around January 20, 2026 (the "Data Breach") in which unauthorized third parties accessed and/or exfiltrated Plaintiff's and Class Members' highly sensitive

personal information, including but not limited to: names, phone numbers, addresses, dates of birth, Social Security numbers, and other personal "personally identifiable information" ("PII") under applicable federal and state law (collectively, "PII" or "Personal Information").

2.      Defendant WorkForce Software, LLC is a limited liability company headquartered in Livonia, Michigan. Defendant provides workforce management software to businesses and organizations.

3.      Defendant's servers and databases retain information on the employees of its customers, the businesses and organizations that use WorkForce. Defendant's failure to secure its servers and databases jeopardized the security of Plaintiff's and Class Members' Personal Information, and exposed Plaintiff and Class Members to fraud and identity theft.

4.      Defendant's conduct led to the Data Breach. Hackers exfiltrated Plaintiff and Class Members' data, invaded Plaintiff's and Class Members' privacy, and exposed Plaintiff and Class Members to identity theft and fraud. Accordingly, Plaintiff and Class Members now must take action to protect themselves from identity theft and fraud.

## PARTIES

### *Plaintiff*

5.     Plaintiff Charles Brown, Jr. is a Michigan resident who is paid by his employer through WorkForce. His information is kept on Defendant's databases, as his employer uses Defendant's databases to manage payroll and other workforce operations.

### *Defendant*

6.     Defendant WorkForce Software, LLC is a limited liability company with its principal place of business located at 38705 Seven Mile Road, Suite 300 Livonia, Michigan 48393. Defendant offers workforce management software to businesses and organizations. Defendant's software can collect data on employees, manage payrolls, automate schedules, track time and attendance, and analyze workforce performance. Defendant's customers employ Defendant's software to manage their workforces. Defendant collects information on the people in its customers' workforces.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(a) and (d), because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of five million dollars ($5,000,000.00), there are in excess of 100 Class Members, the

action is a class action in which one or more Class Members are citizens of states different from Defendant.

8.     The Court has personal jurisdiction over Defendant because Defendant is headquartered in Michigan, maintains its principal place of business in Michigan, and conducts substantial business in Michigan.

9.     Venue properly lies in this judicial district because Defendant is headquartered in Livonia, Michigan.

## FACTUAL ALLEGATIONS

### *Defendant Collects and Stores Personal Information*

10.     Defendant WorkForce Software, LLC sells workforce management software services to businesses and organizations.

11.     In the regular course of business, Defendant routinely collects, stores, and maintains highly sensitive personal information, including personally identifiable information ("PII") on behalf of its customers and users. As described in its public-facing privacy materials, Defendant collects and maintains PII including, but not limited to, names, addresses, contact details, work schedules, job classifications, employment history, compensation data, employee photographs, electronic login identifiers, email addresses, home addresses, telephone numbers,

and other sensitive data such as health information, biometric data, and geolocation data.[1]

12.    Defendant benefits from collecting PII from its customers and users, including Plaintiff and Class Members. Defendant collects PII in part to develop new products, perform research and analytics, to personalize content for customers, to advertise and market to customers, to support its business operations, and to conduct business transactions.[2]

### *The Data Breach*

13.    On or around January 20, 2026, the ransomware group Cl0p breached Defendant's systems due to Defendant's failure to secure its databases, gaining access to Plaintiff's and Class Members' sensitive Personal Information.[3]

14.    Cl0p threatened to publish Plaintiff's and Class Members' Personal Information unless Defendant contacted Cl0p.[4]

---

[1] WorkForce Software, *Privacy Notice for WorkForce Software Employees,* https://workforcesoftware.com/privacy-employees/ (last accessed Jan. 28, 2026).

[2] *See* WorkForce Software, An ADP Company, *Workforce Software Consolidated Privacy Notice*, https://workforcesoftware.com/privacy-notice-external/#_Toc46332299 (last accessed Jan. 28, 2026).

[3] *See* DeXpose, *Clop Ransomware Targets Workforce Software In Major USA Cyber Incident*, https://www.dexpose.io/clop-ransomware-targets-workforce-software-in-major-usa-cyber-incident/#:~:text=Summary.%20On%20January%2021%2C%202026%2C%20the%20notorious,a%20cyberattack%20against%20WorkForce%20Software%2C%20LLC%20 (last visited Jan. 28, 2026).

[4] *See id.*

15.     Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information they were maintaining for Plaintiff and Class Members, causing the exposure of PII, such as encrypting the information or deleting it when it is no longer needed.

16.     Defendant failed to secure its databases consistent with industry standards and best practices, allowing Cl0p to exfiltrate PII.

17.     Upon information and belief, the ransomware group Cl0p and other cybercriminals have obtained *inter alia*, names, addresses, dates of birth, Social Security numbers, and other highly sensitive PII following the Data Breach.

### ***Defendant Knew That Criminals Target PII***

18.     At all relevant times, Defendant knew, or should have known that Plaintiff's and Class Members' PII was a target for malicious actors. Defendant keeps sensitive information related to payroll, the sort of information that hackers seek.[5]

19.     Despite such knowledge, Defendant failed to implement and maintain reasonable and appropriate data privacy and security measures to protect Plaintiff's and Class Members' PII from cyber-attacks that Defendant should have anticipated and guarded against.

---

[5] *See* Cyber Press, *Workday Confirms Data Breach Exposing Customer Data and Case Information,* https://cyberpress.org/workday-confirms-data-breach/ (last accessed Jan. 20, 2026).

20.     It is well known amongst companies that store sensitive personally identifying information that sensitive information—such as Social Security numbers ("SSNs")—is valuable and frequently targeted by criminals. Indeed, "[d]ata breaches are on the rise for all kinds of businesses, including retailers . . . . Many of them were caused by flaws in . . . systems either online or in stores."[6]

21.     PII is a valuable property right.[7] The value of PII as a commodity is measurable.[8] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[9] American companies spend many billions of dollars on acquiring personal data of consumers.[10] It is so valuable to

---

[6]   Dennis Green, Mary Hanbury & Aine Cain, *If you bought anything from these 19 companies recently, your data may have been stolen*, BUSINESS INSIDER (Nov. 19, 2019, 8:05 AM), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1.

[7]   *See* Marc van Lieshout, *The Value of Personal Data*, 457 International Federation for Information Processing 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible…"), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data.

[8]   *See* Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE.COM (April 28, 2014), http://www.medscape.com/viewarticle/824192.

[9]   OECD, *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD LIBRARY (April 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en (last accessed Jan. 27, 2026).

[10]   IAB Data Center of Excellence, *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*,

identity thieves that once PII has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

22.     As a result of their real and significant value, identity thieves and other cyber criminals have openly posted credit card numbers, SSNs, PII, and other sensitive information directly on various Internet websites making the information publicly available. This information from various breaches, including the information exposed in the Data Breach, can be readily aggregated and become more valuable to thieves and more damaging to victims.

23.     Consumers place a high value on the privacy of that data. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[11]

24.     Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

---

IAB.COM (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/ (last accessed Jan. 27, 2026) (estimated to have spent over $19 billion in 2018).
[11]     Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) INFORMATION SYSTEMS RESEARCH 254 (June 2011), https://www.jstor.org/stable/23015560?seq=1.

### ***Theft of PII Has Grave and Lasting Consequences for Victims***

25.    Theft of PII is serious. The Federal Trade Commission ("FTC") warns consumers that identity thieves use PII to exhaust financial accounts, receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[12]

26.    Identity thieves use personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.[13] According to Experian, one of the largest credit reporting companies in the world, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it" to among other things: open a new credit card or loan; change a billing address so the victim no longer receives bills; open new utilities; obtain a mobile phone; open a bank account and write bad checks; use

---

[12]    *See* Federal Trade Commission, *What to Know About Identity Theft*, FEDERAL TRADE COMMISSION CONSUMER INFORMATION, https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed Jan. 27, 2026).

[13]    The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 C.F.R. § 603.2. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number. *Id*.

a debit card number to withdraw funds; obtain a new driver's license or ID; use the victim's information in the event of arrest or court action.[14]

27.    With access to an individual's PII, criminals can do more than just empty a victim's bank account—they can also commit all manner of fraud, including: obtaining a driver's license or official identification card in the victim's name but with the thief's picture; using the victim's name and SSN to obtain government benefits, or; filing a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's SSN, rent a house, or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[15]

28.    Identity theft is a very difficult problem to solve. In a survey, the Identity Theft Resource Center found that most victims of identity crimes need more

---

[14]   *See* Susan Henson, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself*, EXPERIAN, https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/.
[15]   *See* Federal Trade Commission, *Warning Signs of Identity Theft*, IDENTITYTHEFT.GOV, https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last accessed Jan. 27, 2026).

than a month to resolve issues stemming from identity theft and some need over a year.[16]

29.    Theft of SSNs also creates a particularly alarming situation for victims because those numbers cannot easily be replaced. To obtain a new SSN, a breach victim has to demonstrate ongoing harm from misuse of his SSN, and a new SSN will not be provided until after the harm has already been suffered by the victim.

30.    Due to the highly sensitive nature of SSNs, theft of SSNs in combination with other PII (e.g., name, address, date of birth) is akin to having a master key to the gates of fraudulent activity. TIME quotes data security researcher Tom Stickley, who is employed by companies to find flaws in their computer systems, as stating, "If I have your name and your Social Security number and you don't have a credit freeze yet, you're easy pickings."[17]

31.    For these reasons, the information compromised in the Data Breach is significantly more valuable than the loss of basic financial information, because there, victims can cancel or close credit or debit card accounts. Upon information

---

[16]    Identity Theft Resource Center, *2021 Consumer Aftermath Report*, IDENTITY THEFT RESOURCE CENTER (2021), https://www.idtheftcenter.org/identity-theft-aftermath-study/ (last accessed Jan. 27, 2026).

[17]    Patrick Lucas Austin, *'It Is Absurd.' Data Breaches Show it's Time to Rethink How We Use Social Security Numbers, Experts Say*, TIME (August 5, 2019), https://time.com/5643643/capital-one-equifax-data-breach-social-security/.

and belief, the information compromised by the Data Breach—for example, a Social Security number—is exceedingly difficult, if not impossible, to change.

32.    It is within this context that Plaintiff and Class Members must now live with the knowledge that their PII is forever in cyberspace and was taken by people willing to use the information for any number of improper purposes and scams, including making the information available for sale on the black market.

### *Defendant Fails to Comply With Industry Standards*

33.    Cyber security experts routinely identify entities in possession of PII as being particularly vulnerable to cyberattacks because of the value of the information which they collect and maintain.

34.    As a result, several best practices have been identified that, at a minimum, should be implemented by entities in possession of PII, like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data. Defendant failed to follow these industry best practices, including a failure to implement multi-factor authentication.

35.    Defendant failed to follow, enforce, or maintain the aforementioned best practices. Defendant also failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including

without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

### *Damages Sustained by Plaintiff and the Other Class Members*

36.    Plaintiff and Class Members have suffered injury and damages, including, but not limited to: (i) a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of their PII; (iv) deprivation of the value of their PII, for which there is a well-established national and international market; and (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face.

37.    Plaintiff and Class Members had a reasonable expectation of privacy in their sensitive PII while being paid for their work. Plaintiff and Class Members would not have made their PII available to Defendant had they known that Defendant would fail to protect their PII. Indeed, Plaintiff and Class Members submitted their information to Defendant with the reasonable expectation that Defendant would keep their PII secure and inaccessible to unauthorized parties. Plaintiff and Class

Members would not have obtained services from Defendant had they known that Defendant failed to properly train its employees, lacked safety controls over its computer network, and did not have proper data security practices to safeguard their PII from criminal theft and misuse.

38.    Plaintiff and all other Class Members have suffered injury and damages, including, but not limited to: (i) a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of their PII; (iv) deprivation of the value of their PII, for which there is a well-established national and international market; and/or (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face.

39.    As a result of Defendant's failures, Plaintiff and Class Members are also at substantial and certainly impending increased risk of suffering identity theft and fraud or misuse of their PII. Indeed, Plaintiff's and Class Members' damages are not merely speculative. Consequently, Plaintiff and Class Members now face a substantially increased risk of identity that is plausibly imminent, considering the actual instances of fraud already suffered by other Class Members.

## CLASS ALLEGATIONS

40.     This action is brought and may be properly maintained as a class action

pursuant to Fed. R. Civ. P. 23.

41.     Plaintiff brings this action on behalf of himself and all Members of the

following Classes of similarly situated persons:

**Nationwide Class**
All persons in the United States whose PII was accessed by and
disclosed to unauthorized persons as a result of the Data Breach.

**Michigan Subclass**
All persons in the state of Michigan whose PII was accessed by and
disclosed to unauthorized persons as a result of the Data Breach.

42.     The Nationwide Class and Michigan Subclass are collectively referred

to herein as the "Class."

43.     Excluded from the Class is Defendant and its affiliates, parents,

subsidiaries, officers, agents, and directors, as well as the judge(s) presiding over

this matter and the clerks of said judge(s).

44.     Plaintiff reserves the right to modify or amend the definition of the

proposed Class before the Court determines whether certification is appropriate.

45.     Certification of Plaintiff's claims for class-wide treatment is

appropriate because Plaintiff can prove the elements of the claims on a class-wide

basis using the same evidence as would be used to prove those elements in individual

actions alleging the same claims.

46.     While the precise number of Class Members has not yet been determined, the Members in the Class are so numerous that joinder of all Class Members in a single proceeding would be impracticable. Upon information and belief, the Data Breach affected tens of thousands of individuals who are geographically dispersed.

47.     Common questions of law and fact exist as to all Class Members and predominate over any potential questions affecting only individual Class Members. Such common questions of law or fact include, *inter alia*:

    a. Whether Defendant had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiff's and Class Members' PII from unauthorized access and disclosure;

    b. Whether Defendant failed to exercise reasonable care to secure and safeguard Plaintiff's and Class Members' PII;

    c. Whether an implied contract existed between Class Members and Defendant providing that Defendant would implement and maintain reasonable security measures to protect and secure Class Members' PII from unauthorized access and disclosure;

    d. Whether Defendant breached its duties to protect Plaintiff's and Class Members' PII; and

e. Whether Plaintiff and Class Members are entitled to damages and the measure of such damages and relief.

48.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of themselves and Class Members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

49.     Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all proposed Members of the Class, had his PII compromised in the Data Breach. Plaintiff and Class Members were injured by the same wrongful acts, practices, and omissions committed by Defendant, as described herein. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class Members.

50.     Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff is an adequate representative of the Class in that Plaintiff has no interests adverse to, or that conflict with, the Class he seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

51.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial

detriment suffered by Plaintiff and Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class Members to individually seek redress from Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
**(On behalf of Plaintiff and the Nationwide Class)**

52.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

53.    Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in safeguarding and protecting their PII in its possession, custody, or control.

54.    Defendant knew the risks of collecting and storing Plaintiff's and Class Members' PII and the importance of maintaining secure systems. Defendant knew of the many data breaches that targeted businesses that collect sensitive PII in recent

years.

55.    Given the nature of Defendant's business, the sensitivity and value of the PII it maintains, and the resources at its disposal, Defendant should have identified the vulnerabilities to its systems and prevented the Data Breach from occurring.

56.    Defendant breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect PII entrusted to it— including Plaintiff's and Class Members' PII.

57.    It was reasonably foreseeable to Defendant that  failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiff's and Class Members' PII to unauthorized individuals.

58.    But for Defendant's negligent conduct or breach of the above-described duties owed to Plaintiff and Class Members, their PII would not have been compromised.

59.    Defendant's duties also arise from Section 5 of the FTC Act ("FTCA"), 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, the unfair act or practice by business, such as Defendant, of failing to employ reasonable measures to protect and secure PII.

60.    Defendant violated Section 5 of the FTCA by failing to use reasonable measures to protect Plaintiff's and Class Members' PII and not complying with applicable industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtains and stores, and the foreseeable consequences of a data breach involving PII including, specifically, the substantial damages that would result to Plaintiff and the other Class Members.

61.    It was reasonably foreseeable to Defendant that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems, would result in the release,

disclosure, and dissemination of Plaintiff's and Class Members' PII to unauthorized individuals.

62.     As a result of Defendant's above-described wrongful actions, inaction, and want of ordinary care, and its negligence and negligence per se, that directly and proximately caused the Data Breach, Plaintiff and Class Members have suffered, and will continue to suffer, economic damages and other injury and actual harm in the form of, *inter alia*: (i) a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure, publication, and theft of their PII; (iii) breach of the confidentiality of their PII; (iv) deprivation of the value of their PII, for which there is a well-established national and international market; (v) the continued risk to their PII which remains in Defendant's possession; and (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risk of identity theft that they face and will continue to face. In addition, Class Members already have suffered actual fraud and identity theft as alleged herein, demonstrating how imminent the threat of such fraudulent activity and damages are to all Class Members.

## COUNT II
## BREACH OF FIDUCIARY DUTY
### (On behalf of Plaintiff and the Nationwide Class)

63.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

64.    Plaintiff and Class Members provided Defendant their PII in confidence, believing that Defendant would protect that information. Plaintiff and Class Members would not have provided Defendant with this information had they known it would not be adequately protected. Defendant's acceptance and storage of Plaintiff's and Class Members' PII created a fiduciary relationship between Defendant, on the one hand, and Plaintiff and Class Members, on the other hand. In light of this relationship, Defendant must act primarily for the benefit of its customers, which includes safeguarding and protecting Plaintiff's and Class Members' PII.

65.    Defendant had a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of their relationship. Defendant breached that duty by failing to properly protect the integrity of its systems containing Plaintiff's and Class Members' PII and failing to safeguard Plaintiff's and Class Members' PII that they collected.

66.    As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will suffer injury, including,

but not limited to: (i) a substantial increase in the likelihood of identity theft; (ii) the compromise, publication, and theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII; (iv) lost opportunity costs associated with efforts attempting to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII which remains in Defendant's possession; and (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII compromised as a result of the Data Breach. In addition, upon information and belief, Class Members already have suffered actual fraud and identity theft, demonstrating how imminent the threat of such fraudulent activity and damages are to all Class Members.

### COUNT III
### BREACH OF IMPLIED CONTRACT
### (On behalf of Plaintiff and the Nationwide Class)

67.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

68.     In connection with engaging Defendant's services, Plaintiff and Class Members entered into implied contracts with Defendant.

69.     Pursuant to these implied contracts, Plaintiff and Class Members provided Defendant with their PII. In exchange, Defendant agreed to, among other things, and Plaintiff understood that Defendant would: (1) take reasonable measures

to protect the security and confidentiality of Plaintiff's and Class Members' PII; and (2) protect Plaintiff's and Class Members' PII in compliance with federal and state laws and regulations and industry standards.

70.    The protection of PII was a material term of the implied contracts between Plaintiff and Class Members, on the one hand, and Defendant, on the other hand. Had Plaintiff and Class Members known that Defendant would not adequately protect its customer's PII, they would not have engaged Defendant's services.

71.    Plaintiff and Class Members performed their obligations under the implied contract when they provided Defendant with their PII and engaged Defendant's services in receiving payment for their work.

72.    Defendant breached its obligations under its implied contracts with Plaintiff and Class Members in failing to implement and maintain reasonable security measures to protect and secure their PII and in failing to implement and maintain security protocols and procedures to protect Plaintiff's and Class Members' PII in a manner that complies with applicable laws, regulations, and industry standards.

73.    Defendant's breach of its obligations of its implied contracts with Plaintiff and Class Members directly resulted in the Data Breach and the injuries that Plaintiff and Class Members have suffered from the Data Breach.

74.     Plaintiff and Class Members were damaged by Defendant's breach of implied contracts because: (i) they paid—directly or through its insurers—for data security protection they did not receive; (ii) they face a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their PII was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their PII has been breached; (v) they were deprived of the value of their PII, for which there is a well-established national and international market; and (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face.

<u>**COUNT IV**</u>
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Nationwide Class)**

75.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

76.     This claim is pleaded in the alternative to the breach of implied contract claim.

77.     Plaintiff and Class Members conferred a monetary benefit upon Defendant when they engaged Defendant's services and provided information to Defendant.

78.    Defendant accepted or had knowledge of the benefits conferred upon it by Plaintiff and Class Members. Defendant also benefitted from the receipt of Plaintiff's and Class Members' PII, as this information was used for Defendant's benefit, including producing new products and services, conducting research and analytics, supporting Defendant's business operations, and marketing, research, and development.

79.    As a result of Defendant's conduct, Plaintiff and Class Members suffered actual damages in an amount equal to the difference in value between their payments made with reasonable data privacy and security practices and procedures that Plaintiff and Class Members paid for, and those payments without reasonable data privacy and security practices and procedures that they received.

80.    Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members because Defendant failed to adequately implement the data privacy and security procedures for itself that Plaintiff and Class Members paid for and that were otherwise mandated by federal, state, and local laws and industry standards.

81.    Defendant should be compelled to provide for the benefit of Plaintiff and Class Members all unlawful proceeds received by them as a result of its conduct and Data Breach alleged herein.

## <u>COUNT V</u>
## VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT

**Mich. Comp. Laws §§ 455.901 *et seq*. ("MCPA")**
**(On behalf of Plaintiff and Nationwide Class, or Alternatively, the Michigan Subclass)**

82.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

83.    Plaintiff and Defendant are "persons" under the MCPA. MCL § 455.902(d).

84.    Defendant's transactions and conducting of business, namely producing and selling its software, is "trade or commerce" under the MCPA. MCL § 455.902(g).

85.    The MCPA lists 38 categories of practices that are considered unfair, unconscionable, or deceptive, and thus unlawful, under the statute. MCL § 455.903. Defendant's conduct in collecting information on Plaintiff and Class Members through the sale of its software while omitting or concealing that its data privacy practices are inadequate and that the sensitive information entrusted to it was exposed to a breach, constitutes unfair, unconscionable, deceptive, and thus unlawful, practices in at least the following categories:

        a.    "Representing that . . . services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . ." MCL § 455.903(c);

b.  "Representing that . . . services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" MCL § 455.903(e);

c.  "Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer" MCL § 455.903(s); and

d.  "Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner" MCL § 455.903(cc).

86.  Had Plaintiff and Class Members been aware of the omitted and misrepresented facts, i.e., that Defendant does not value data privacy and does not protect sensitive information, Plaintiff and the other Class Members would not have provided information to Defendant and used Defendant's payroll services.

87.  Pursuant to MCL § 455.911(4), Plaintiff seeks damages on behalf of himself and Michigan Class Members.

## COUNT VI
## VIOLATIONS OF MICHIGAN'S DATA BREACH NOTIFICATION STATUTE
### Mich. Comp. Laws §§ 445.71 *et seq*.
### (On behalf of Plaintiff and Nationwide Class, or Alternatively, the Michigan Subclass)

88.  Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

89.     Plaintiff is authorized to bring this claim under MCL § 445.73(13).

90.     Defendant owns, maintains, and records PII, and computerized data including PII, about the employees who engage Defendant's services, including Plaintiff and Class Members.

91.     Defendant possesses PII belonging to Plaintiff and Class Members and is responsible for reasonably safeguarding their PII consistent with the requirements of MCL § 445.72.

92.     Defendant failed to safeguard, maintain, and dispose of, as required, the PII within their possession, custody, or control, which it was required to do by Michigan law.

93.     Defendant knowingly and/or reasonably believing that Plaintiff's and Class Members' PII was acquired by unauthorized persons during the Data Breach, failed to provide reasonable and timely notice of the Data Breach to Plaintiff and Class Members, as required by MCL § 445.72(1), (4).

94.     As a result of Defendant's failure to reasonably safeguard Plaintiff's and Class Members' PII, and the failure to provide reasonable and timely notice of the Data Breach to Plaintiff and Class Members, Plaintiff and the Class have been damaged as described therein, continue to suffer injuries as detailed above, are subject to the continued risk of exposure of their PII in Defendant's possession, and are entitled to damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

Plaintiff, individually and on behalf of all other Members of the Class, respectfully request that the Court enter judgment in their favor and against Defendant as follows:

A.      Certifying the Class as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's counsel as Class Counsel;

B.      Awarding Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, and disgorgement;

C.      Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, on behalf of themselves and the Class, seeks appropriate injunctive relief designed to prevent Defendant from experiencing another data breach by adopting and implementing best data security practices to safeguard PII and to provide or extend credit monitoring services and similar services to protect against all types of identity theft;

D.      Awarding Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

E.      Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

F.      Awarding Plaintiff and the Class such other favorable relief as allowable under law.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: January 28, 2026

*/s/ Gregory A. Mitchell*
E. Powell Miller (P39487)
Gregory A. Mitchell (P68723)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, MI 48307
T: (248) 841-2200
epm@millerlawpc.com
gam@millerlawpc.com

Bradley K. King
**AHDOOT & WOLFSON, PC**
521 Fifth Avenue, 17th Floor
New York, New York 10175
Telephone: (917) 336-0171
Facsimile: (917) 336-0177
bking@ahdootwolfson.com

*Attorneys for Plaintiff and the*
*Proposed Class*